I IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISAAC MIRWIS, ETAN MIRWIS, ISAAC BUCHINE, MARK BUCHINE, ISAAC JACOBSON, and MYRA WEISFELD, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-cv-630 |
| MANSFIELD INDEPENDENT SCHOOL DISTRICT and TEXAS ASSOCIATION OF PRIVATE AND PAROCHIAL SCHOOLS, | § § § § § § | |
| Defendants. | § | |

**BRIEF IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Pursuant to Local Rule 7.1 of the Local Rules for the United States District Court for the Northern District of Texas, Plaintiffs submit this Brief in Support of Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction, and would show as follows:

**I. INTRODUCTION**

This is a civil-rights lawsuit brought by members of a high school basketball team and their parents to prevent infringement of their constitutional rights to observe their religious faith. The student plaintiffs have won the right, by defeating rival teams in free and fair competition, to participate in the semifinal round of a state basketball championship. They are Orthodox Jewish Sabbath-observers who cannot, under the immutable rules of their religious faith, play basketball between sundown on Friday and nightfall on Saturday. Pursuant to the regulations of defendant TAPPS, they arranged with the school against whom they were scheduled to play on Friday,

1

March 2, to begin their game before 3:30 p.m. so that it would conclude by sundown. They also formally applied for rescheduling of the game, but on February 27, the defendant TAPPS, through its director Edd Burleson, denied the requested rescheduling. TAPPS then substituted the team that the plaintiffs had defeated for the plaintiffs' team in the semifinal round.

This proceeding is filed two days after that denial and two days before the game in which the plaintiff students would play if their religious rights were not being denied. Immediate injunctive relief is necessary because any delay will result in permanent, irretrievable, and irreparable loss of the right to play and possibly win the championship.

Since TAPPS arranged that the games would be played on publicly owned facilities—in the basketball court of Mansfield High School—the refusal to reschedule the times of the semifinal games (and the final if the Plaintiffs' team advances to the final) involves governmental participation and therefore infringes Plaintiffs' constitutional and statutory rights under the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution and the Texas Religious Freedom Restoration Act ("TRFRA"), TEX. CIV. PRAC. & REM. CODE § 110.001 *et seq*.

The concerted conduct of TAPPS and MISD fails to comply with federal constitutional standards because it violates the principle of "denominational neutrality" that is "the clearest command of the Establishment Clause." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Most of the parochial schools that are members of TAPPS celebrate Sunday as their day of worship and rest. Accordingly, TAPPS, in coordination with MISD, would never schedule a basketball game on a Sunday. But TAPPS and MISD treat Saturday observance of the Sabbath derogatorily and reject requests for rescheduling from Christian schools that follow the Seventh-Day Adventist faith and from Jewish schools that recognize Saturday as the Sabbath. This preference for

Sunday observance cannot withstand the strict scrutiny that is the governing constitutional measure.

The defendants' conduct also violates TRFRA because MISD—a governmental agency—is participating in TAPPS' refusal to reschedule the semifinal basketball game to be played on its premises and has thereby burdened the plaintiffs' free exercise of religion. Neither TAPPS nor MISD can establish the "compelling government interest" that would justify the burden on the plaintiffs' free exercise of their religion resulting from a refusal to reschedule. Nor can they demonstrate that denying the rescheduling of the March 2 semifinal game (or the final scheduled for March 3) is the "least restrictive means of furthering" any possible government interest.

Finally, TAPPS's refusal to reschedule violates its own regulations and Bylaws. TAPPS's published rules permit games to be rescheduled if the competing teams agree on a rescheduled time. Although the team that is to compete in the semifinal round against the plaintiffs agreed initially to accommodate the plaintiffs' Sabbath-observance, the TAPPS board refused, in violation of its own regulations, to permit an agreed-upon rescheduling.

## II.  ARGUMENT

### THE FOUR-PART STANDARD FOR A TRO AND A PRELIMINARY INJUNCTION IS SATISFIED.

The well-established four-part legal standard for granting a preliminary injunction has been set out in many decisions of the Fifth Circuit. *E.g., Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 332 (5th Cir. 1981). All four components are satisfied in this case and require the entry of the requested TRO and preliminary injunction.

**A.      Plaintiffs Are Likely To Succeed on the Merits.**

All three claims made by the Plaintiffs are valid and are likely to prevail if a full trial were held.

There is no doubt that the preferential policy followed by the Defendants—preserving Sunday as a day free of basketball games but denying the same respect to those who observe Saturday, be they Christian or Jewish—violates the prohibition against "denominational preferences" clearly enunciated in the Supreme Court's decision in *Larson v. Valente*, 456 U.S. 228 (1982).

The violation of the TRFRA is equally clear. The recent decision of the Court of Appeals for the Fifth Circuit in *A.A. v. Needville Independent School District*, 611 F.3d 248 (5th Cir. 2010), demonstrates how broadly TRFRA is applied to protect individual religious observance. If the school's grooming policy at issue in *A.A.* was not deemed sufficiently "compelling" to override a student's religious claim to be permitted to wear unbraided, unshorn hair in school, the defendants' claimed interest in refusing to reschedule a basketball game is, a fortiori, inadequate under the Texas statute.

Finally, the provision of the TAPPS regulations that permits competing teams to agree to a rescheduled date is clear and unconditional. TAPPS's refusal to abide by its own regulations would not be upheld in a full trial of this case, and it should not, therefore, be a bar to the entry of prompt injunctive relief.

**B.      Plaintiffs Will Suffer Irreparable Injury If the Injunction Is Not Issued.**

The Student Plaintiffs won the right to advance to the semifinals of the basketball competition.

Solely because of their religious observance they are being denied the opportunity to advance to the finals and possibly to win the championship. A team that the Plaintiffs defeated is now scheduled to play in their place in the semifinal round.

If injunctive relief is denied, there will never be another opportunity for these students to compete at this level for the championship. They will be treated as having forfeited an opportunity that they would have enjoyed if not for their religious beliefs and observances.

It is difficult to conceive of a more patent instance of irreparable injury. This is a once-in-a-lifetime opportunity for the students that they will lose and never have again if the TAPPS-MISD action is not corrected by court order.

**C.     The Threatened Injury to the Plaintiffs Outweighs Potential Harm to the Defendants.**

The defendants suffer little harm if the semifinal game is played earlier on Friday and, if the plaintiffs' team wins in the semifinal, the final game is played later on Saturday. Indeed, TAPPS's own rules contemplate flexibility in scheduling by authorizing teams to reschedule the time of contests through negotiation. If the times of the plaintiffs' potential games are changed, no overriding or compelling policy of either TAPPS or MISD is affected in any way.

The only possible harm to the defendants is that TAPPS's inflexible refusal to alter the schedule it has prescribed will have to be adjusted with respect to two games on its schedule. That is not a palpable "injury" that would justify denying the plaintiffs' constitutional, statutory, and contractual rights. Nor can it be said to "outweigh" the irreparable harm to the plaintiffs that will result if injunctive relief is denied.

**D.     Granting the Injunction Will Not Disserve the Public Interest.**

If the "public interest" factor weighs to any side in this case, it surely supports the issuance of injunctive relief. By granting an injunction, the Court will promote the public

interest in preserving and protecting religious freedom, and it will demonstrate the law's respect for those who abide conscientiously by their religious principles. Denying injunctive relief would permit arbitrary enforcement of rules and schedules to trump sincerely held religious beliefs and observances.

**E.      Plaintiffs Are Not Barred Because They Joined the Association With Knowledge of TAPPS' Rules.**

TAPPS has claimed that the plaintiffs' team entered the association with knowledge of the "schedule . . . provided by TAPPS," and that they are, therefore, bound to abide by the schedule. TAPPS even asserts that it was misled in granting membership to the Beren Academy. In fact, the TAPPS rules authorize modifications of schedules, and the plaintiffs were entitled to rely on the availability of that avenue to resolve any possible conflict with their religious observances.

Moreover, the contention that "you knew the rules when you signed up" would, if upheld, be a ground for rejecting every advance in civil rights and every effort to invalidate unconstitutional and illegal provisions. When purchasers bought homes with restrictive covenants in their deeds, they knew the "rules" of their purchase. Yet as early as *Shelley v. Kraemer*, 334 U.S. 1 (1948), the Supreme Court invalidated such covenants. Many landmark precedents in the history of civil rights resulted from challenges by individuals who saw a patent injustice and assumed a place that would give them standing to challenge and change that injustice. By the same token, the plaintiffs are not barred from challenging the refusal to accommodate their Sabbath-observance simply because they joined the TAPPS competition with knowledge that the customary scheduling of the semifinals and final games occurs on Friday and Saturday.

### III.  CONCLUSION

For the foregoing reasons, this Court should issue the requested Temporary Restraining Order and Preliminary Injunction.

> Respectfully submitted,
>
> /s/ Rohan A. Rohan
> Tim Gavin
>   State Bar No. 07769800
> tgavin@ccsb.com
> Richard A. Rohan
>   State Bar No. 17203800
> rrohan@ccsb.com
> Alexander More
>   State Bar No. 24065789
> amore@ccsb.com
> Sara Apel
>   State Bar No. 24067488
> sapel@ccsb.com
> CARRINGTON, COLEMAN, SLOMAN &
>   BLUMENTHAL, L.L.P.
> 901 Main Street, Suite 5500
> Dallas, Texas 75202
> Telephone: (214) 855-3000
> Facsimile: (214) 855-1333
>
> Of Counsel:
>
> Nathan Lewin
> Alyza D. Lewin
> Lewin & Lewin, LLP
> 1775 Eye Street, N.W., Suite 850
> Washington, D.C.  20006
> Telephone:  202-828-1000
> Facsimile:   202-828-0909
>
> *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a copy of the foregoing instrument was served upon the Defendants in this action in accordance with Rule 5, Federal Rules of Civil Procedure, on this 1st day of March, 2012.


                                        /s/ Richard A. Rohan